UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| United States <u>ex rel</u>. Vijayant Singh,<br><br>*Plaintiff-Relator,*<br><br>v.<br><br>Hudson Hospital OPCO, LLC d/b/a Christ Hospital, et al.,<br><br>*Defendants.* | Civil Action No. 21-cv-19788 (MEF)(AME)<br><br>**OPINION and ORDER** |

For the purposes of this brief Opinion and Order, the Court assumes full familiarity with the allegations and procedural history of this case.

\*   \*   \*

The federal government created a program that paid hospitals based on the number of Covid-19 patients they were treating. See First Amended Complaint ("Complaint") ¶¶ 60-61. The hospital-Defendants here applied for and received payments. See id. at ¶¶ 85-90, 93-95.

The Plaintiff alleges some of the payments were improper, because the hospital-Defendants claimed them for patients who did not qualify as Covid patients under program eligibility standards. See id. at ¶ 103. Because of this, the Plaintiff alleges, these payments needed to be returned to the federal government, but were not. See id. at ¶¶ 9, 138, 154.

Per the Plaintiff, this adds up to two violations of the False Claims Act. See id. at ¶¶ 161, 165.

The Defendants move to dismiss the Plaintiff's Complaint, based on three arguments. These are not persuasive, and the motion is therefore denied.

\* \* \*

The Defendants' <u>first</u> argument: the Complaint's allegations proceed on the assertedly-erroneous assumption that the relevant federal program allowed for payment only if the patient had a positive Covid test --- when in fact, it is said, payment was also allowed for patients who were "clinically diagnosed" with Covid. <u>See</u> Motion to Dismiss at 21-24.

But this is besides the point, at least for now.

Whether there was one permitted diagnostic method (testing) or two (testing or clinical diagnosis), it was the same bottom line diagnosis that mattered: that a patient for whom federal funds were sought had Covid. <u>See</u> Motion to Dismiss at 23-24.

Here, the Plaintiff plausibly alleges that payments were not received solely for people who <u>had</u> Covid --- but also for people who the Defendants merely <u>suspected</u> had Covid.

More specifically: the Complaint alleges that funds were received for more than 600 people, <u>see</u> Complaint ¶ 109, who were not coded by the hospital-Defendants as having Covid, <u>see</u> <u>id</u>. at ¶ 83, but as being "suspected" of having Covid, <u>id</u>. at ¶¶ 83, 109, as having had "contact" with a positive patient, <u>id</u>., or as a "'Possible Exposure' but later ruled out Covid." <u>Id</u>.

And the Complaint alleges that this was not simply a here-and-there coding issue.

When presented with a relevant internal audit, the chief executive officer of the company that directed the operations of the hospital-Defendants, <u>see</u> <u>id</u>. at ¶¶ 30, 35, is alleged to have directed employees to "redo the[] audit," so as to "include patients . . . who were only suspected of having the disease." <u>Id</u>. at ¶ 118.

The chief financial officer of the same company is alleged to have responded to an internal audit by "instruct[ing]" personnel to "find a way to treat questionable (not confirmed positive) COVID-19 patients as qualified[.]" <u>Id</u>. at ¶ 124.

In short: the Plaintiff has plausibly alleged the Defendants applied for and received funds based on "suspected" Covid cases,

2

and the Defendants do not contend that was allowed, regardless of what diagnostic method was used.

\* \* \*

Second, while the Plaintiff alleges that under the relevant terms of service the hospital-Defendants were required to refund the extra federal funds they received, see Complaint ¶¶ 9, 138, the Defendants say they were told the hospitals did not actually need to make a refund, at least in certain circumstances. See Motion to Dismiss at 24-28.

How were they told? Via a federal government Frequently Asked Questions webpage, that is said to have included statements like this: "[g]enerally, HHS does not intend to recoup funds as long as a provider's lost revenue and increased expenses exceed the amount of Provider Relief funding a provider has received." Motion to Dismiss at 26; see also id. (citing two other statements on the website).

Though they do not say it in so many words, the Defendants essentially argue that the website FAQ page worked as a release.

One party may have owed money (as the Plaintiff alleges here) but then was told the money did not need to be paid back (as the Defendants say happened here, by means of the website). See generally Release, Black's Law Dictionary (2d ed. 1910) ("[t]he relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists or to whom it accrues, to the person against whom it might have been demanded or enforced").

But a release is an affirmative defense. See Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 781 (3d Cir. 2007); Ahmed v. Wells Fargo Bank, NA, 432 F. Supp. 3d 556, 562 (E.D. Pa. 2020).

And "courts rarely consider affirmative defenses on motions to dismiss." Clean Air Council v. U.S. Steel Corp., 4 F.4th 204, 211 (3d Cir. 2021).

The Court declines to do so here.

The affirmative defense invoked by the Defendants is not the sort that "appears on [the] face" of the Complaint. Id.

3

Rather, it is based on a small initial wedge of extrinsic evidence, the proffered webpage FAQs.[1]

But for the Defendants' affirmative defense to potentially work, a great deal of added extrinsic evidence must also make its way into the case. At a minimum: evidence as to a set of major medical institutions' "lost revenue and increased expenses" over a certain period of time, and how they compare to "the amount of . . . [r]elief [they] . . . received." Motion to Dismiss at 26 (quoting webpage).

But none of this has been put before the Court.

And if it were, it would necessarily draw on allegations that are well outside the pleadings --- and accordingly are not appropriate for resolution on a motion to dismiss. See, e.g., Shah v. Horizon Blue Cross Blue Shield of N.J., 2017 WL 4284470, at *3 (D.N.J. Sept. 17, 2017) ("This defense implicates facts outside the scope of the pleadings, and thus this issue cannot be decided on a motion to dismiss."); Pickett v. Ocean-Monmouth Legal Servs., Inc., 2012 WL 1601003, at *2 (D.N.J. May 7, 2012) ("When a Rule 12(b)(6) motion is based on an affirmative defense, a fact that is left out of the complaint but that is necessary proof required to prevail on the basis of that affirmative defense will be fatal to the defendant's motion."); see also Dragotta v. West View Savings Bank, 395 F. App'x 828, 831 (3d Cir. 2010).

\* \* \*

Third and finally, the Defendants argue that the Plaintiff has failed to state a claim in the second count of the Complaint, which invokes 31 U.S.C. § 3729(a)(1)(D). See Motion to Dismiss at 28-29.

This section of the False Claims Act "imposes civil liability on anyone who 'has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property.'" U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist., 842 F.3d 430, 438 (6th Cir. 2016) (quoting 31 U.S.C. § 3729(a)(1)(D)).

---

[1] The concept of non-repayment based on lost revenue is alluded to, if briefly, in the Complaint. See Complaint ¶¶ 78, 127, 144.

4

This seems to boil down to three elements --- "(1) possession, custody, or control of property used or to be used by the government; (2) delivery, or causing delivery, of less than all that property; and (3) knowledge of that inadequate delivery." U.S. ex rel Lanaham v. County of Cook, 2021 WL 1688178, at *8 (N.D. Ill. Apr. 29, 2021) aff'd 41 F.4th 854 (7th Cir. 2022); see also U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 2000 WL 1207162, at *7 (E.D. Pa. Aug. 24, 2000) (outlining the same three elements, but with the then-governing intent standard).

But the Defendants argue that under this section of the False Claims Act there is liability only if the entity that improperly received federal funds was a "temporary custodian" of United States property,[2] and the Defendants were plainly not that. See Motion to Dismiss at 28-29.

But the Defendants have not sought to explain, as least for now, where this "temporary custodian" idea comes from.

They cite no case law for it.[3] It does not appear in the text of the statute. And the secondary source the Defendants cite, see id. at 29 n.60 (citing Claire M. Sylvia, The False Claims Act: Fraud Against the Government § 4:15 (2023)), lays out the same three elements set out above --- and does not say that a "temporary custodian" element should be folded into the mix.[4]

---

[2] On the Defendants' interpretation, this part of the False Claims Act would seem to be in play mainly in bailment situations.

[3] And some case law runs the other way. See, e.g., U.S. ex rel. Harbit v. Consultants in Gastroenterology, P.A., 2021 WL 1197124, at *7 (D.S.C. Mar. 30, 2021) (holding that defendants' failure to remit funds received from the federal government passed muster under this section of the False Claims Act).

[4] To the extent the Defendants are arguing that there are insufficient allegations as to the three elements set out in the text, see Motion to Dismiss at 28-29, the Court concludes that enough has been pled. As to the first element, the Plaintiff alleges the hospital-Defendants had possession of money from the United States that they were obligated to return, and that the United States would surely have "used" if returned. See Complaint ¶¶ 91, 102-03, 107-09, 126-27, 138. As to the second, the Plaintiff alleges the hospitals failed to return, or

5

\*   \*   \*

For the reasons set out above, the motion to dismiss is denied.

IT IS on this 9th day of May, 2024, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

"deliver," the money to the United States. See id. at ¶¶ 126-27, 138, 154. And as to the third, the Plaintiff alleges the hospitals knew they retained money from the United States that they were required to return. See id. at ¶¶ 124, 126, 135, 154-57. (These paragraphs focus on allegations that internal audits made the Defendants aware that the hospitals were retaining funds in excess of what they were allowed to, and that senior officials were told on multiple occasions that the extra money needed to be returned.)

6